Parker C. J.
This action is for money had and received. By it the plaintiff claims the proceeds of seven bundles of hemp sold under the defendant’s order by De Coninck & Co. The amount was remitted by them to a banker in London, subject to the order of George De Wolf, on whose account it has been paid. The hemp was part of a cargo shipped by Steiglitz & Co. at St. Petersburg on board the ship Octavia, owned by George De Wolf and one Morice, but according to the invoices and bills of lading of the outward cargo, that belonged to the plaintiff, and the proceeds were intended to be shipped to him. Steiglitz & Co. took five bills of lading from the defendant, master of the ship, in which no consignee- was mentioned, but the goods were to be delivered to order or assigns ; and one of the bills of lading was indorsed to the plaintiff by Steiglitz & Co. and sent on to him ; but the defendant denies that he knew of this indorsement, and there is no evidence that he did know of it. On her voyage from St. Petersburg the vessel met with disasters and the defendant was obliged, as the case states, to put into Copenhagen. It is not *110 questioned that this act was justifiable, for this action affirms t^e d0‘mgs of the defendant in that particular and claims the proceeds of the hemp as sold at Copenhagen, a sale thereof having been made by the order of the defendant. Whether the defendant has made himself liable by virtue of the bills of lading made and indorsed as before mentioned, or in consequence of his order to remit the proceeds on account of De Wolf, depends upon other facts detailed in the case. - The outward cargo, though shipped ostensibly by the plaintiff, in fact belonged to De Wolf and Morice, who were the owners of the vessel and of the voyage. By the agreement referred to in the case, between them and the plaintiff, it appears that the latter was only colorably the owner for the purpose of security for an advance of money made by him to them. It does not appear that the defendant knew of the existence of this agree ment, but he knew that the ship belonged to De Wolf and Morice, and that they conducted the voyage. His instructions as to the disposition of the outward and the procuring a homeward cargo were given by them, and the plaintiff is not mentioned therein. Nor does it appear that the plaintiff gave him any directions whatever as to the management of the property or in relation to the voyage. All he can be presumed to know is, that the plaintiff was the shipper of the outward cargo ; which he might gather from the invoice and bills of lading; but he had a right, under the circumstances, to suppose that the purpose intended by this was answered by the delivery of the outward cargo ; and recurring to his instructions, he would see that the provision for the return cargo was made by De Wolf and Morice and not by the plaintiff. The bills of lading too, which Steiglitz & Co. caused him to sign, furnished no indication to whom the cargo was consigned, and for aught he knew, the consignees would be De Wolf and Morice. At any rate, they stood to him as the conductors of the voyage, and this gave him a right to presume that they were in fact owners of the cargo, or at least that they had such a control over it as to justify him in treating the portion of it sold in Copenhagen as theirs.
Under these circumstances we think the defendant could not be made liable to the plaintiff without notice to him of the *111 plaintiff’s interest in the cargo, or proof of knowledge on his part of the failure of De Wolf before he ordered the remittance from Copenhagen to him; but it cannot be inferred from any facts in the case that he had such knowledge. Admitting the property in the cargo to have been legally the plaintiff’s, yet we think he gave, by the mode of conducting the transaction, such an agency and control to George De Wolf as justified the defendant in dealing with him as owner. The bill of lading indorsed to the plaintiff without doubt vested the legal interest in him, but he had suffered the order and disposition and apparent ownership to remain in the owners of the vessel and the framers of the voyage, and it would be unjust to allow him to claim now of the defendant a sum of money, which by seasonable information of the state of things between him and George De Wolf might have been kept from George De Wolf’s hands.
These bills of lading, though prima facie evidence of abso lute property in him to whom they are indorsed bona fide and for a valuable consideration, are nevertheless capable of being explained ; as in the case of Hibbert et al. v. Carter, 1 T. R. 745, where it was held, that though the indorsement and delivery of a bill of lading to a creditor prima facie conveys the whole property in the goods from the time of its delivery, yet j'f the intention of the parties appears to have been only to bind the net proceeds in case of the arrival of the goods, the property of the goods is for the purpose of insurance considered to remain in the indorser. The intention here was only to bind the net proceeds, to secure the advance made by the plaintiff, and the defendant was kept ignorant that the plaintiff had any interest in the cargo. We think under these circumstances he is not liable for the proceeds of the part of the cargo necessarily taken out and sold; and therefore the plaintiff has not supported his action.[1]

 See Long on Sales, (Rand’s edit.) 202 et seq.; Mien v. Williams, 12 Pick, 300; Abbott cn Shipping, (Sto'y’s edit. 1829,) 387 et seq.